In re GENERAL OIL DISTRIBUTORS, INC., et al., Debtors.

CHARTER INTERNATIONAL OIL COMPANY, Plaintiff,

v.

GENERAL OIL DISTRIBUTORS, INC., Defendant.

No. 882–80516–20.
Adv. No. 882–0899–20.

United States Bankruptcy Court, E.D. New York.

Oct. 13, 1983.

Levin, Weintraub & Crames, New York City, for General Oil Distributors, Inc.; Barry N. Seidel, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for Charter International Oil Co.; Scott Horton, New York City, of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

Charter International Oil Company (Charter), filed a complaint against General Oil Distributors, Inc. (General Oil), requesting an order modifying the automatic stay to permit a pending state court action against General Oil to proceed to trial. For the reasons below, Charter's requested relief is conditionally denied.

*Background*

Prior to the commencement of General Oil's reorganization proceedings, Charter commenced a civil action in the 157th Judicial District Court of Harris County, Texas (the State Court Action), against General Oil, General Oil & Refining, Inc. (General Refining), Channelview Terminal Corporation (Channelview), South Central Oil Company (South Central), and Allen Wechter, an executive officer and principal of General Oil. Charter alleges that pursuant to an exchange agreement Charter supplied oil and gasoline to General Oil, and that after Charter was unable to get payment from General Oil, it discovered that its oil had been shuttled between the various corporate defendants. Charter further alleges that the corporate defendants "were part of a bewildering web of related and affiliated companies which appeared to be controlled by an executive officer and principal of General Oil, namely, Allen Wechter, from offices in Texas."

Subsequent to the commencement of the State Court Action, General Refining and Channelview each filed a case under chapter 11 which was referred to the Honorable Phil Peden, United States Bankruptcy Judge for the Southern District of Texas (Texas Bankruptcy Court). The commencement of the Texas bankruptcy proceedings stayed the Texas State Court Action as to General Refining and Channelview. Charter thereafter removed the State Court Ac-

tion to the Texas Bankruptcy Court. Subsequently, on motion of South Central and General Refining, the Texas Bankruptcy Court remanded the action back to State Court and more recently, the Texas Bankruptcy Court issued an order modifying the automatic stay to allow Charter to continue its action against General Refining and Channelview in the State Court.

### Discussion

Neither Charter nor General Oil contests the Court's authority to modify the automatic stay to permit a creditor to continue an action against the debtor in another forum. The disputed issue is whether the surrounding circumstances are appropriate to grant such relief in this case.

Section 362(d) of the Bankruptcy Code provides that the court shall grant relief from the stay for cause. 11 U.S.C. § 362(d)(1) (Supp. IV 1980). The legislative history of section 362(d) recognized the reason that Charter has now set forth to modify the automatic stay:

[A] desire to permit an action to proceed to completion in another tribunal may provide another cause.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6300. However, Congress certainly did not intend that a party's mere desire would constitute cause for modifying the stay. Congress intended that the automatic stay be lifted where the pending bankruptcy case would not be adversely affected. The House Report continues:

Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally, proceedings in which the debtor is a

fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

*Id.* at 343–44; *see* S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978), U.S.Code Cong. & Admin.News 1978, p. 6300.

The House and Senate Reports indicate that where the protection of the debtor from his creditors is not being furthered, the automatic stay should be lifted. The Seventh Circuit recently summarized that:

The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, ... thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'

*Holtkamp v. Littlefield,* 669 F.2d 505, 508 (7th Cir.1982). In addition to considering the purpose of the automatic stay, the Court must consider whether modifying the stay in this case will be in "harmony with the Code's policy of quickly and efficiently formulating plans for repayment and reorganization." *Id.; see GAF Corp., et al. v. Johns-Manville Corp., et al.,* 26 B.R. 405, 9 B.C.D. 1403, 1412 (Bkrtcy.S.D.N.Y.1983) ("Because lifting the stay would have the negative effect of vitiating Manville's breathing spell and frustrating Manville's attempts at formulating a reorganization plan, the requested relief would detract from the goals of a Chapter 11 reorganization and must be denied.").

While there may be equities lying in favor of Charter's request, the Court finds that allowing Charter to proceed against General Oil in the State Court Action would have a detrimental impact on General Oil's efforts to formulate and solicit acceptances for a plan,[1] and would likely lessen the

1. At the hearing on this matter, counsel for      General Oil represented that General Oil is

funds available for General Oil's creditors. A relatively long out-of-state trial on the liability of the several parties in the State Court Action would be far more expensive than a hearing in the near future in this Court on an objection to Charter's claim.

Charter presents several "considerations" to establish cause for granting relief from the automatic stay. What merit that exists in these considerations, however, is either offset by other considerations or simply outweighed by the detrimental impact on General Oil's estate. First, Charter states that the State Court Action can be certified for trial in approximately four months. Regardless of when the State Court Action can be certified for trial, however, its actual commencement and its conclusion could take a relatively long time. *See In re Duplan*, 9 B.R. 946, 948 (Bkrtcy.S.D.N.Y.1981). Second, Charter asserts that the State Court Action will not hinder General Oil's reorganization case. This assertion clearly ignores the potential harmful ramifications of leaving one of the largest unsecured claims contingent for any length of time could have upon claim holders' approval of the debtor's plan. *See Duplan*, 9 B.R. at 948; *GAF Corp.*, 9 B.C.D. at 1412. Furthermore, Charter fails to note the inherent expense to General Oil in defending an out-of-state multi-defendant trial.

As a third consideration, Charter argues that the continuation of the State Court Action would allow the utilization of extensive discovery. Charter has presented no reasons, however, why such discovery could not be utilized by both Charter and General Oil in the preparation and the presentation of their cases before this Court, or how such discovery could be more efficiently used in the Texas litigation. Fourth, Charter asserts that the State Court Action would avoid a duplication of efforts and generally would be less burdensome to all parties due to the proximity of the witnesses. However, since the automatic stay was adopted by Congress to protect the debtor, the

Court must principally consider the potential harm *to the debtor* in determining whether to modify the stay. Therefore, the potential harm to the debtor of greater legal fees and other expenses associated with defending a multi-party out-of-state court action is a strong countervailing factor. In addition, considering that General Oil's advanced efforts to formulate and gain approval of a plan could be seriously threatened by a lengthy trial on a substantial claim, the Court must leave the stay intact.

Charter's citation to *In re Olmstead*, 608 F.2d 1365 (10th Cir.1979), and *In re Philadelphia Athletic Club, Inc.*, 9 B.R. 280 (Bkrtcy.E.D.Pa.1981), is misplaced. In *Olmstead*, the Court held that the bankruptcy court did not abuse its discretion in deferring the determination of the debtor's liability to another court where there was no prejudice shown to the bankrupt, and where it was obvious that the bankruptcy court would save considerable time, effort and money. 608 F.2d at 1367–68. In the instant case, the potential prejudice to the debtor is obvious, and the savings of time, effort and money is not at all clear. In *Philadelphia Athletic Club*, the Court granted relief from the automatic stay on the basis that there had already been lengthy proceedings in the state court. 9 B.R. at 282. The bankruptcy court observed:

> To require the state court plaintiff to start those proceedings all over again in this court will clearly be a waste of judicial and legal time and effort. Since the state court action is almost at an end, the most expeditious way to liquidate the claim of the plaintiff is to permit the state court action to be concluded. This will cause the least delay and expense for all concerned.

*Id.* In the instant case, in order to protect its reorganization efforts, General Oil should be permitted to avoid lengthy state court proceedings.

presently working on a disclosure statement and has completed a draft of a seventy-five

page proposed plan of reorganization.

**720**

Other cases in which courts have modified the stay to prevent proceedings to continue in other forums, generally involve situations where the pending action would in no way interfere with the bankruptcy proceedings, *see, e.g., Matter of Holtkamp,* 669 F.2d 505, 508–09 (7th Cir.1982) (insurance company assumed full financial responsibility for defending that litigation), or situations where the plaintiff would be without any remedy if the stay were not modified. *See, e.g., In re McGraw,* 18 B.R. 140, 142 (Bkrtcy.W.D.Wis.1982) (plaintiff would be precluded from recovery against solvent codefendants whose liability could only be established vicariously); *In re Honosky,* 6 B.R. 667, 669 (Bkrtcy.S.D.W.Va.1980).

Finally, Charter argues that if this Court hears General Oil's objections to Charter's claim, there exists a danger of inconsistent results. Charter fears that the State Court may conclude that only General Oil is liable and that this Court may conclude that only parties other than General Oil are liable. Charter further explains that with both Courts unable to enter judgment, it would be denied participation in any of the currently pending bankruptcy proceedings. But such an event would not represent inconsistent results, it would represent Charter's inability to prove its cases. The Court is confident that if Charter has a valid claim against General Oil, it can prove so at a hearing to consider General Oil's objections to the claim.

The Court believes that a quick resolution of Charter's claim could minimize duplicative litigation and other problems. Since, as Charter represents, its complaint in the State Court Action "is essentially based on an *alter ego* theory," a resolution of General Oil's alleged primary liability could determine the outcome of the State Court Action, or perhaps narrow the issues therein. In addition, a quick determination of General Oil's liability would avoid any logistical problems caused by simultaneous hearings in this Court and the State Court. General Oil should have no objection to a hearing in the near future, given its argument against waiting for the State Court to determine General's liability. Therefore, the denial of

Charter's request to modify the automatic stay is granted on condition that General Oil file an objection to Charter's claim within 30 days, and that General Oil set a hearing on said objection for no later than 60 days from the date hereof. Upon the mutual consent of the parties involved in the hearing, the Court will grant adjournments.

Settle Order.