In re Bruce N. HARRIS, Debtor.

NATIONAL CREDIT UNION ADMINIS-TRATION, in its capacity as liquidating agent of Barnstable Community Federal Credit Union, a federally insured credit union, Plaintiff,

v.

Bruce N. HARRIS, Defendant.

Bankruptcy No. 91–32091–BKC–RAM. Adv. No. 91–1100–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

Jan. 7, 1992.

Daniel L. Bakst, Ackerman, Bakst, Gundlach, Lauer & Zwickel, West Palm Beach, Fla., for trustee.

Richard J. Cohen, Braunstein, Cohen and Herman, Hyannis, Mass., for debtor.

Douglass M. Wendel, Palm Beach, Fla., trustee.

David R. Softness, Gelfand & Softness, Miami, Fla., Steven W. Widerman, Gen. Counsel, National Credit Union Admin., Washington, D.C., for plaintiff N.C.U.A.

## ORDER STAYING PROCEEDING

ROBERT A. MARK, Bankruptcy Judge.

THIS CAUSE having come before the Court on Tuesday, January 7, 1992, at 1:30 p.m., upon the motion of Plaintiff, National Credit Union Administration Board ("NCUA"), seeking an Order staying the instant proceeding, and the Court having considered the pleadings and the file, good cause appearing and the Court being otherwise fully advised does hereby find and determine as follows:

### BACKGROUND FACTS

1. NCUA, is an independent agency of the executive branch of the United States Government, organized and existing under the laws of the United States, 12 U.S.C. Section 1751, et seq.

2. On June 28, 1991, NCUA placed Barnstable Community Federal Credit Union ("BCCU") into liquidation pursuant to 12 U.S.C. Section 1787(a), and appointed itself liquidating agent of BCCU.

3. NCUA alleges that: Debtor, Bruce N. Harris ("Harris" or "Debtor"), was Chairman of the Board of BCCU and a member of its Executive Committee from October 1987 through October 1990; Debtor was a member of the Investment Committee from June 1987 through June 1990; and, Debtor previously served as Secretary and as a Director of BCCU from April through October 1987.

4. On June 17, 1991, Plaintiff commenced a lawsuit styled: *National Credit Union Administration, etc., v. Robert Cohen, et al.,* Civil Action No. 91–1169–Y,

which is currently pending in the United States District Court for the District of Massachusetts (the "District Court Case").

5. In the District Court Case, NCUA alleges, *inter alia* that the Debtor, while holding official positions at BCCU, participated in fraudulent schemes in violation of state and federal criminal laws, and the Federal Credit Union Act.

6. On July 22, 1991, Debtor filed this Chapter 7 bankruptcy (the "Bankruptcy").

7. On or about November 15, 1991, Plaintiff filed the instant adversary proceeding (the "Adversary"), seeking to have the Debtor's debt to it be declared nondischargeable pursuant to Sections 523(a)(2)(A), (a)(4), or (a)(11).

8. The Adversary relies upon the allegations in the District Court Case to establish the elements of nondischargeability.

9. The motion at issue seeks a stay of the Adversary pending a determination in the District Court Case pursuant to Section 523(a)(11) of the Code, *supra.*

10. Trial in the District Court Case is set for the Court's April 8, 1992 trial calendar.

### DISCUSSION

Section 523 of the Code provides, *inter alia,* that an individual debtor is not discharged from any debt:

(a)(2)(A) for money, property, services or extension, renewal or financing of credit to the extent that it was obtained by false pretenses, a false representation, or actual fraud, ...

(a)(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

(a)(11) provided in any final judgment, unreviewable order, or consent order or decree entered in any court of the United States or of any state, issued by a federal depository institution's regulatory agency, or contained in any settlement agreement entered into by the debtor, arising from any act of fraud or defalcation while acting in a fiduciary capacity

committed with respect to any depository institution or insured credit union.

NCUA urges that a judgment in the District Court Case will necessarily be dispositive of the Adversary due to the fraud allegations. NCUA argues, therefore, that a plain reading of 523(a)(11) requires that the Adversary be stayed pending that determination. The issue is one of timing, to wit, does 523(a)(11) require NCUA to obtain its final judgment prior to the filing of the bankruptcy, or should a civil action filed prior to the bankruptcy be allowed to proceed to final judgment subsequent to the bankruptcy? I find that the latter result is mandated by Section 523(a)(11).

 This Court has exclusive jurisdiction to determine the nondischargeability of the debts under Section 523(a)(2) and (a)(4). However, the Section 523(a)(11) nondischargeability issue can concurrently be decided in other courts, including United State District Courts. The general rule is stated in 3 Collier On Bankruptcy, 523.06 at 523–36 (15th Edition, 1985): "As to debts excepted from discharge other than those falling within the ambit of Section 523(2), (4), and (6), the Bankruptcy Court has original but not exclusive jurisdiction; its jurisdiction is concurrent with the appropriate local court."

Section 523(a)(11) was recently added to the Code. Its obvious aim, coming as it did in the midst of a national banking crisis, is to streamline litigation against the scoundrel bankers, and prevent the use of the Bankruptcy Court as a shield against such litigation.

Arguably, 523(a)(11) adds little to the existing state of the law regarding nondischargeability. Since fraud can be determined to be nondischargeable pursuant to 523(a)(2) and (4), the fraudulent banker would in most cases be prevented from receiving a discharge of the resulting debt. The difference is that that issue would have to be proven in the bankruptcy court. Further, there is significant case law relative to if and when prebankruptcy judgments based on fraud govern the issue of dischargeability. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *In re Neely,* 125 B.R. 392 (Bankr. S.D.N.Y.1991).

Statutory construction requires this Court to assume that Congress knew the state of the law under 523(a)(2) and (4) when it nevertheless decided to add Section 523(a)(11) to the Code. This Court's duty is to enforce that section as adopted by Congress.

This Court believes that the language of 523(a)(11) requires that the motion at issue be granted and the Adversary stayed. To construe it otherwise would be to essentially render it meaningless and to cause duplicative litigation which would be wasteful of the resources of the Court and the parties. No court has interpreted 523(a)(11) to date. However, many courts have considered similar language such as under Section 523(a)(9) which deals with debts based on tort liability resulting from drunk driving. *In re Anderson,* 74 B.R. 463 (Bankr. E.D.Wis.1987); *In re Cardona,* 50 B.R. 596 (Bankr.S.D.Fla.1985). In these cases, the Court withheld further action in the nondischargeability proceeding and permitted the plaintiff creditor to seek a judgment in a state court suit.

The District Court Case not only involves five defendants and complex factual issues, but scores of witnesses and thousands of pages of exhibits. Conducting a full trial on dischargeability in this forum will essentially require all the proofs which will ultimately be introduced in the District Court Case. This would not only be inconvenient to both parties and a significant waste of judicial economy, but it would also raise the specter of inconsistent judgments.

The Court and the parties will save considerable time, effort and money by awaiting the outcome of the trial of the District Court Suit, which is set for the Court's April 8, 1992 trial calendar, and reviewing the facts there presented before liquidating and determining the dischargeability of the debt.

 Notwithstanding the pendency or ultimate conclusion of the District Court Case, this Court recognizes its ongoing obligation to the parties in this action (includ-

ing the Defendant). Upon completion of the District Court Case and upon appropriate motion by *either* party, this Court will review the judgment and/or other records of the proceedings and make the ultimate determination on the issue of dischargeability or dismissal of the Adversary. Following a judgment in the District Court Case, this Court may accept or request, in its discretion, further evidence from the parties to supplement the record of the District Court Case. Deferring determination of dischargeability of a debt until the creditor's claim is liquidated in another court of competent jurisdiction is well within the discretion of a Bankruptcy Court, absent prejudice to the debtor. *In re Olmstead,* 608 F.2d 1365 (10th Cir.1979).

NCUA is authorized to proceed against the Debtor in the District Court Case. In order to do so, this Court construes the complaint and the motion at issue to encompass relief from the automatic stay in compliance with Bankruptcy Rules 4001 and 9019. *See In re Anderson,* 74 B.R. 463.

The foregoing notwithstanding, NCUA may not proceed with collection efforts on any judgment received in the District Court Case, unless and until a final non appealable judgement of this Court determines the debt to be nondischargeable. It is therefor

ORDERED and ADJUDGED:

1. The automatic stay is lifted to permit NCUA to proceed against the Debtor in the District Court Case through final judgment, but not collection of said judgment.

2. Upon the entry of a final judgment in the District Court Case, and upon motion of the appropriate party, this Court will review that judgment, the record of the District Court Case, and any further evidence which it accepts, and will enter a separate judgment on dischargeability in this Adversary.

DONE AND ORDERED.